WEBB GRANITE AND CONSTRUCTION COMPANY *vs.* BOSTON AND MAINE RAILROAD.

Worcester.   October 3, 1910. — October 20, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Evidence,* Of previous statements made by witness, Relevancy and materiality.   *Fire. Railroad.   Practice, Civil,* Conduct of trial, Exceptions.

The general rule, excluding evidence, offered at a trial for the purpose of corroborating a witness, of statements made by the witness previous to and of the same purport as his testimony at the trial, should be adhered to unless when it is offered it is clearly apparent from the course of the trial that the circumstances call for the application of one of the exceptions to the general rule. Whether the circumstances are such as to call for the application of such an exception is a question of fact to be decided primarily by the presiding judge,

whose decision thereon should not be set aside by this court unless it is plainly wrong.

In an action of tort against a railroad company for the loss of buildings of the plaintiff by fire, it appeared that the fire was communicated to the plaintiff's buildings from buildings of a third person between the plaintiff's buildings and the railroad, which evidence of the plaintiff tended to show were ignited by fire from a locomotive engine of the defendant, while the defendant contended that the origin of the fire was inside the buildings. The plaintiff produced only one witness who testified to seeing a fire start outside the buildings. It appeared that immediately after the fire the witness was advised to see the attorney for the defendant. In cross-examination he stated that all the circumstances of the fire always had been clear in his mind, and that he did not think that it was notice of a suit that made him think of seeing the defendant's attorney. A letter written by him to the attorney of the defendant was introduced in evidence, which among other things stated that the witness understood that his name had been given "as a witness," and that his idea in writing the letter, "after seeing the notice of suit" was to learn whether he was "to be called in the case. If so, by whom and when?" He also stated in cross-examination that he interviewed the defendant's attorney, but denied that he then stated in substance that he was not clear as to the circumstances of the fire. A second letter from him to the defendant's attorney, written about eleven months after the first one, then was introduced in evidence, in which he again asked whether he was to be called as a witness in the case, and stated, "I want to refresh my memory in quite a few little things that I have forgotten since the night it [the fire] happened." The witness in cross-examination told the same story as to the fire that he had told in direct examination. The plaintiff, "to cut off any possible argument" that the witness's testimony was "of recent contrivance, or was the result of bias or of any suggestion made to him from any source, or that he was willing to testify for either side, depending upon the inducements held out to him," offered to show that immediately after the fire the witness related to a police officer the same account of it that he had given in his testimony. When the offer was made, the defendant's counsel stated, "All I have done is to simply read two letters." The evidence offered was excluded. *Held,* without deciding whether the exclusion was or was not proper, that, if under the circumstances the presiding judge thought and was justified in thinking that one of the purposes of the defendant in introducing the letters was to show that the witness was corrupt and willing to vary his testimony according to the interest of the party by whom eventually he might be called, the corroborative evidence offered by the plaintiff should have been admitted, unless such purpose was disavowed; and that otherwise it should have been rejected.

In an action of tort against a railroad company for the loss of buildings of the plaintiff by fire, it appeared that the fire was communicated to the plaintiff's buildings from buildings of a third person between the plaintiff's buildings and the railroad, which evidence of the plaintiff tended to show were ignited by fire from a locomotive engine of the defendant, while the defendant contended that the origin of the fire was inside the buildings. The building of the third person which first caught fire was provided with electric light wires. A witness for the plaintiff, qualified as an expert, testified that he had inspected the wiring a few weeks before the fire, had made some few changes in it, and considered it perfectly safe. The owner of the building testified to changes and additions which had been made in the electric lighting before those made a few weeks before the fire, and stated that there had been no inspection of the additional

lights by the city inspector, that the city inspector had not been notified of his intention to make the changes, and that he, the owner, knew nothing about the requirements of any city ordinance in that regard. The defendant then offered an ordinance which required notification of the city supervisor of wires before the making of any changes in wiring, and that such supervisor be given an opportunity to examine the wiring before it was covered or enclosed. The plaintiff's attorney objected, in the hearing of the jury, to the evidence, stating that he understood it to be "offered so far as it has any tendency to control, if it does, the evidence that has been offered by the plaintiff that the electric wiring there is safe and as eliminating one probable cause of the fire." The defendant's attorney said nothing. The presiding judge admitted the evidence, stating, "I should say it didn't have any broader scope than that, and I think . . . it is competent in cross-examination of this witness without finally deciding what its limitations are." There was a verdict for the defendant; and the plaintiff alleged exceptions. *Held*, that the ordinance had no bearing to show the actual condition of the electrical apparatus in the building in question, that it was inadmissible to characterize the act of the owner of the building as illegal, or as an admission by him, since he was not a party to the action, and that it had no bearing on any of the issues of the trial and should have been excluded; and, *also*, that its admission harmed the plaintiff, because the jury properly might have understood from the statements of the plaintiff's attorney and of the presiding judge, and from the silence of the defendant's attorney, that the evidence was admitted as bearing at least in some way on the probabilities whether the wires were in a safe condition.

TORT for loss of buildings of the plaintiff alleged to have been caused by fire communicated by a locomotive engine of the defendant. Writ dated March 19, 1909.

The case was tried before *Sanderson*, J. It appeared that the fire was communicated to the buildings of the plaintiff directly from the buildings of one Edward A. Cowee, which consisted of a grain mill, an elevator and a one-story storehouse attached thereto, and which were situated adjacent to and east of the tracks of the defendant and between them and Crescent Street in the city of Worcester. The plaintiff's property was on the east side of Crescent Street, opposite the Cowee property. Cowee's storehouse was on the north side of his elevator and was erected upon posts, the floor being about four feet from the ground. There was more or less lumber, hay, straw and rubbish under and about the storehouse. The fire on Cowee's premises was discovered about four o'clock in the morning of February 5, 1909, the storehouse being the first to burn. No question was made but that the plaintiff's buildings caught fire from the burning Cowee buildings, and the origin of the Cowee fire was the issue.

The letter of April 14, 1909, referred to in the opinion, from the witness Butler to Mr. Thayer, the defendant's counsel, was as follows:

"Dear Sir: After the fire which destroyed the Webb Granite & Construction Co., the officer who travels the beat told me that he had given my name as a witness, to some one who had called at police headquarters. As I did see the affair, practically from its beginning, I had no objection of the use of my name. My idea in writing you is, after seeing the notice of suit being brought over the affair, I wish to know if I am to be called in the case? If so, by whom and when? Hoping you will pardon me if I have put you to any trouble in my questions, I am, very respectfully yours, James W. Butler."

The letter from Butler to Mr. Thayer of March 5, 1910, was as follows:

"Dear Sir: Will you kindly inform me if I am to be called in as a witness in that B. & M. case? Why I ask is that I would want to refresh my memory in quite a few little things that I have forgotten about since the night it happened. Very respectfully yours, James W. Butler."

There was evidence tending to show that on the morning of the fire Butler met a police officer named Tisdale, to whom he made a statement regarding the fire. The plaintiff offered Tisdale as a witness as to what that statement was. Upon the defendant's counsel objecting, the plaintiff's counsel stated: "This evidence is now offered on account of the line of cross-examination of the witness Butler, and to cut off any possible argument of my friend that the story now told by Butler is of recent contrivance, or is the result of bias or of any suggestion made to him from any source, or that he was willing to testify for either side, depending upon the inducements held out to him. If that is not to be the argument, then the offer by Tisdale that Butler made the same statement to him the morning of the fire is, of course, entirely immaterial. If that is to be argued, then Tisdale's testimony becomes important and competent." The defendant's counsel replied, "All I have done is to simply read two letters." The plaintiff's counsel then stated further, "We offer to show by this witness that Butler made entirely the same statement while the fire was in progress." The presiding judge

then stated, " You may be right in your offer, but it is excluded," and the plaintiff's counsel stated, " I wish to save an exception to the exclusion of the statement made by Butler to Tisdale directly after the fire, offered for the purpose of corroborating Butler, and for the purpose of cutting off any argument on the lines I have stated."

Other facts are stated in the opinion.

There was a verdict for the defendant; and the plaintiff alleged exceptions.

*G. S. Taft*, (*T. H. Sullivan* with him,) for the plaintiff.

*C. M. Thayer*, for the defendant.

HAMMOND, J.   This case raises simply two questions of evidence, — one arising out of the exclusion of evidence offered by the plaintiff to show that on the morning of the fire the witness Butler made the same statement as to the fire that he made at the trial, and the second arising out of the admission of the ordinance of the city of Worcester.

1. It is urged by the plaintiff that the credibility and good faith of the witness had been attacked by the defendant on cross-examination, and hence that the evidence offered should have been admitted to show that his testimony about the origin of the fire was not of recent fabrication.   At the trial the main question actually in dispute was whether the fire started on the outside of Cowee's buildings or on the inside of them.   Upon this question there was conflicting evidence.   Unless the fire started on the outside there was no case for the plaintiff.

Butler, who was called by the plaintiff and who " was the only witness who testified to seeing a fire before the building caught," testified that when he first saw the fire it appeared to be " on the ground, near the north side of . . . [Cowee's] . . . building," and that on the morning of the fire he was advised by some one that he ought to go up and see Mr. Thayer, the general attorney for the defendant; and that before going to see Mr. Thayer he " first wrote to him."   Upon cross-examination he testified in substance that he always had been of the opinion that when he first saw the fire " it was on the ground "; that " everything connected with this . . . [had] . . . always been perfectly clear in . . . [his] . . . mind " at all times; that the gentleman who told him he ought to go and see Mr. Thayer was

one Whiting, the operator in the tower of the Cowee building; and that he did not think it was the notice of a suit that first led him to think of seeing Mr. Thayer, although as to this he did not remember. The defendant then introduced the letter of April 14, 1909. This letter seems to indicate that at the time it was written the witness knew of the suit. He further testified that after sending that letter he called upon Mr. Thayer. The cross-examination continued as follows: " Q. Now, at that time, Mr. Butler, when I asked you about the fire, didn't you say that you would have to think the thing over a little? A. I said there was some matters that occurred there not really concluded in my mind. I would have to think it over, — a few of the actual facts. I didn't even remember the date of the fire. — Q. When you were asked where the fire occurred you said you was a good deal confused and wasn't clear in your mind, the morning you saw me, and didn't want to say? A. No, sir, I remember speaking to you about the fire, and you asked how it looked and I said as if a piece of waste burning. — Q. Are you pretty sure of that? A. Yes. — Q. Didn't you say you wanted to think it over before you made an answer? A. Only used that term as an illustration so you wouldn't get the idea that — Q. But you did want to think the thing over before you wanted to make any answer to that? A. I don't know what things you are trying to get at, — the thinking over part. — Q. I asked you about the fire, — if you didn't see the light, — and you wanted to think it over some. A. I don't remember thinking over — Q. This year — 1910 — early in this year, you weren't perfectly clear about the fire were you, and all matters connected with it, in your mind? A. Well, I was always how and where I see the fire."

He further testified that without any further communication from Mr. Thayer he wrote to him the letter of March 5, 1910, which (omitting the formal parts) reads as follows: " Will you kindly inform me if I am to be called in as a witness in that B. & M. case? Why I ask is that I would want to refresh my memory in quite a few little things that I have forgotten about since the night it happened "; and that there was nothing about the fire in which he was not clear. He then testified as to the fire as he had in his examination in chief, and that he had not seen the attorney for the plaintiff until a week or two before the trial.

There is here no contradictory statement by the witness as to the cause of the fire. He testifies both in the examination in chief and in the cross-examination that, when he first saw it, it was on the ground and that it looked like the burning of a "piece of waste." The most that can be said is that the first letter seems to indicate that his statement that he did not call upon Mr. Thayer in consequence of the suit was not true, and the second letter that he had forgotten a "few little things" that happened on the night of the fire. The evidence subsequently offered by the plaintiff had no tendency to show whether or not the visit of the witness to Thayer was after notice of the suit or in consequence of such notice (apparently an immaterial matter in any event), or that the witness had not forgotten a few things, or what the things were which he might have forgotten. The evidence was offered however "on account of the line of cross-examination of the witness Butler, and to cut off any possible argument . . . that the story now told by Butler is of recent contrivance, or is the result of bias or of any suggestion made to him from any source, or that he was willing to testify for either side, depending upon the inducements held out to him," and further, "for the purpose of corroborating Butler."

The general rule concerning the admission of previous statements for the purpose of corroborating a witness, with its exceptions, was quite fully considered in *Commonwealth* v. *Tucker*, 189 Mass. 457, and it was there said : "The general rule [excluding such statements] is founded upon sound policy. The corroborative evidence, even when admitted, can have, at most, only a very indirect bearing upon the credibility of the witness, while from its very nature it may be likely to influence the jury as substantive evidence of its own truthfulness. And since the danger that the evidence will have such an illegitimate influence is so great, it is important that the general rule should be adhered to unless the case appears clearly within the exception" (p. 484). And further it was said in substance, that whether the course of the trial had been such as to bring the case within any exception to the general rule was a question of fact to be decided primarily by the presiding judge. "His decision upon such a question ought not to be set aside by an appellate court unless it is plainly wrong. To use a common expression, . . .

the admission or exclusion of such testimony rests largely in the discretion of the trial court " (p. 485).

If under the circumstances existing at the time the evidence in question was offered, including the colloquy which then took place between the opposing counsel, the presiding judge thought and was justified in thinking that one of the purposes of the defendant in introducing the letters was to show that the witness Butler was corrupt and willing to vary his testimony according to the interest of the party by whom he eventually might be called, then the evidence should have been admitted to meet this attack unless this purpose was disavowed. Otherwise the evidence should have been rejected. In view of the conclusion to which we have come upon the other exception it becomes unnecessary to decide whether the ruling excluding the evidence was correct. Inasmuch, however, as the question might arise upon a future trial, we have thought it well to state some of the principles applicable to the matter.

2. The plaintiff's evidence tended to show that the fire started in the storehouse at the northern end of the Cowee building and upon the outside of it; and that it spread from there to other parts of the building. The defendant's evidence tended to show that at first it was an " inside fire and started high up on the inside of the mill and elevator."

One possible way in which a fire might have started upon the inside was through defects in electric lighting installed in the building. Wilbur, an expert electrician called by the plaintiff, testified in substance that a few weeks before the fire, which occurred on February 5, 1909, he made some changes in the electric apparatus in some parts of the building and inspected the wiring in the storehouse, and that he considered it perfectly safe. Cowee, the owner of the plant, called by the plaintiff, was examined as to the condition of his buildings at the time of the fire without touching on the subject of electric wiring. On cross-examination he testified that the wiring was put into the plant in December, 1906; that then only nine lights were installed; that between that time and December 24, 1908, the time of the inspection by Wilbur, additional lights were put into the plant, but that the witness got no permit from the city of Worcester to make this addition, and that there had been no

inspection of these additional lights by the city inspector; that this officer was not notified of the intention to make these changes, but the witness thought that after the changes were made this officer was notified to inspect it; that the witness knew nothing about the requirements of any city ordinance; that there never was any change "made with the original installation" in the storehouse; that after the inspection by Wilbur on December 24, 1908, there was no change in any part of the plant; and that the wires in the storehouse never were covered or enclosed.

At the close of Cowee's testimony counsel for the defendant offered and the presiding judge admitted the ordinance in question, which provides in substance that all electrical appliances shall be arranged and maintained to the satisfaction of the supervisor of wires, and that before any changes are made the supervisor shall be notified, who shall be given an opportunity to inspect the wires and fixtures before they are covered or enclosed.

The ordinance was not admissible to show the actual physical condition of the electrical apparatus. It had no bearing on that. Nor was it admissible to show that Cowee had committed an illegal act. He was no party to the suit; and the question was not whether the apparatus was there in violation of law, or in an unlawful condition, but whether it was there at all and in what physical condition. Nor was it admissible as furnishing a ground for argument that Cowee's failure to meet the requirements as to notice to and inspection by the official supervisor was in the nature of an admission that the wiring was so defective that he dared not have it officially inspected, and was not safe even in his own mind. Cowee not being a party to the suit his admissions could not be introduced unless they contradicted his testimony as a witness. Indeed there does not seem to be any way in which the ordinance could have any legitimate bearing on the issues on trial. It was plainly inadmissible.

It is argued, however, that, even if that be so, still the record does not show that the plaintiff was harmed by its admission. It is said that Wilbur testified that all electric wiring within the city limits was inspected by the city supervisor, and that the ordinance did not add substantially anything to the evidence be-

fore the jury.   But in view of what occurred at the time it was admitted this position does not seem tenable.

When the ordinance was offered, the counsel for the plaintiff in stating his objection to its admission used the following language: " I understand that [it] is offered so far as it has any tendency to control, if it does, the evidence that has been offered by the plaintiff that the electric wiring there was safe and as eliminating one probable cause of the fire." Counsel for the defendant said nothing, but the presiding judge said, " I do not know as I will rule definitely on it.   I should say it didn't have any broader scope than that, and I think I said I thought it was competent in the cross-examination of this witness without finally deciding what its limitations were." All this was said in the presence of the jury.   It does not appear that the matter was afterwards alluded to during the trial, or that the limitations were afterwards defined.

We think from this colloquy between counsel and court and the silence of the counsel for the defendant, that the jury properly may have understood that the ordinance was admitted as bearing at least in some way on the probabilities whether the wires were in a safe condition.   The ordinance was wrongly admitted and it cannot be said that it was not prejudicial to the plaintiff.

*Exceptions sustained.*